IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RHONDA CLEMMER and DONNA REDDOUT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-13-1335-C |
| THE COLUMBIA GROUP, INC., a District of Columbia Corporation, and MARTIN ARASE, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

This case arises out of a Stock Purchase Agreement ("the Agreement") that the Plaintiffs and Defendant The Columbia Group, Inc. ("TCG") executed on June 1, 2010 ("Closing Date"). Plaintiffs Rhonda Clemmer and Donna Reddout sold 100% stock interest in the Oklahoma corporation Eagle Systems and Services, Incorporated ("Eagle"), to TCG, a District of Columbia corporation. TCG paid Plaintiffs a base consideration of $10 million on the closing date. (Def. Arase's Mot. to Dismiss, Dkt. No. 65, Ex. 1 at 23.) TCG agreed to also pay Plaintiffs an additional contingent "earn out" of up to $4.8 million "on a pro rata basis, in separate payments after the Closing pursuant to the terms and conditions of Section 2.6." (Id., Ex. 1 at 24.) Specifically, TCG agreed to pay Plaintiffs thirty-two percent of the cumulative gross revenue of Eagle for the first twelve, twenty-four, and thirty-six months but only if Eagle's gross revenue reached the applicable benchmark amounts designated in the Agreement. (See id., Ex. 1 at 27.) TCG warranted that it would carry on Eagle's "business substantially in the usual, regular and ordinary course consistent with past practice" and

would not "impair the ability of [Eagle] to meet or exceed the Applicable Benchmarks for purposes of determining the Earn Out" payments to Plaintiffs. (Id., Ex. 1 at 69-70.) Pursuant to these agreements, TCG paid Plaintiffs an earn out payment of $1,974,605 after Eagle's gross revenue met the twelve-month benchmark of $50 million.

On December 19, 2013, Plaintiffs filed suit against Defendants for breach of contract and fraud in the inducement. Plaintiffs allege that Defendants TCG and Martin Arase, TCG's president, failed to pay Plaintiffs the $975,285 earn out payment due for the twenty-four month period and the $1,850,110.00 earn out payment owed at the conclusion of the thirty-six month period after the sale. Plaintiffs also claim that TCG and Arase took actions that breached the representations and warranties in the Agreement, including making improper distributions and failing to disclose a prior conflicting agreement. Because Defendant Arase signed the Agreement only as a representative of TCG, Plaintiffs seek to hold Defendant Arase personally liable under an alter ego, or corporate veil-piercing, theory. On February 17, 2014, Defendants moved to dismiss Plaintiffs' fraud claims and Plaintiffs' alter ego claim against Defendant Arase for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) and (9)(b). (See Defs.' Br., Dkt. No. 15.) The Court granted Defendants' motion in part, holding that Plaintiffs had sufficiently stated the fraud claims but had failed to sufficiently plead a claim of alter ego under District of Columbia law. (See Order, Dkt. No. 22, at 8, 11-12.) On September 4, 2014, Plaintiffs properly filed an Amended Complaint (Dkt. No. 56), which mirrors Plaintiffs' original claims and contains approximately six additional pages of allegations to "set forth more

particularly" Plaintiffs' claims for alter ego, fraud, and breach of contract. (Pls.' First Am. Compl., Dkt. No. 56, at 9.) On September 25, 2014, Defendant Arase filed a Motion to Dismiss (Dkt. No. 65), arguing that Plaintiffs still have failed to sufficiently plead the alter ego claim pursuant to Fed. R. Civ. P. 12(b)(6). Arase further argues that Plaintiffs' alter ego claim is barred by 12 Okla. Stat. § 682(B). Plaintiffs filed a response (Dkt. No. 73), and Defendant Arase has replied (Dkt. No. 80). The motion is at issue.

## I. STANDARD OF REVIEW

The Supreme Court has made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal citations omitted). At the dismissal stage, the Court will accept all of Plaintiffs' well-pleaded factual allegations as true and view them in the light most favorable to Plaintiffs. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). However, "conclusory allegations that lack 'supporting factual averments are insufficient to state . . . claim[s] on which relief can be based.'" In re Marsden, 99 F. App'x 862, 866 (10th Cir. 2004) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## II. ANALYSIS

A. 12 Okla. Stat. § 682(B)

Defendant argues that Oklahoma law affirmatively bars Plaintiffs from seeking to hold Arase personally liable for claims based on alter ego. 12 Okla. Stat. § 682(B) states:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego.

This statute is substantive law. Racher v. Westlake Nursing Home Ltd. P'ship, No. CIV-13-364-M, 2014 WL 2003041, at *2 (W.D. Okla. May 14, 2014). The Court already has held that the substantive law of the District of Columbia governs Plaintiffs' alter ego claim. (Order, Dkt. No. 22, at 7.) Defendant acknowledges that District of Columbia law sets forth the elements Plaintiffs must prove to justify piercing the corporate veil; however, Defendant argues that whether Plaintiffs are able to maintain a claim based on alter ego in Oklahoma is a separate issue to which Oklahoma substantive law applies pursuant to the doctrine of depecage.

> "Depecage occurs where the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues. The technique permits a more nuanced handling of certain multistate situations and thus forwards the policy of aptness."

Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 794 n.8 (2d Cir. 1980) (quoting Taylor von Mehren, Special Substantive Rules for Multistate Problems: Their

Role and Significance in Contemporary Choice of Law Methodology, 88 Harv. L. Rev. 347, 356 n.24 (1974)). Oklahoma has neither rejected nor adopted the use of depecage, though the Tenth Circuit has rejected the "contention that Oklahoma case law demonstrates approval of its use." Perkins v. Chris Hunt Water Hauling Contractor, Inc., 46 F. App'x 903, 906 (10th Cir. 2002). Regardless of whether Oklahoma law accepts depecage, application of the doctrine in this instance would be improper. The Tenth Circuit has held that "depecage is inappropriate when used to fragment issues related to a common purpose or to legitimatize a smorgasbord approach which inures only to the benefit of the party picking and choosing." Johnson v. Cont'l Airlines Corp., 964 F.2d 1059, 1064 (10th Cir. 1992) (holding that prejudgment interest was an integral element of compensatory damages in a personal injury case and therefore not subject to independent choice of law analysis). Whether Plaintiffs may maintain an alter ego claim and whether Plaintiffs have proven an alter ego claim are issues related to the common purpose of determining whether Arase is personally liable for the alleged harm to Plaintiffs. The Court already has held that the District of Columbia's substantive law governs Plaintiffs' alter ego, or corporate veil-piercing, claim. The Court will not now fragment the issue and apply the substantive law of two states. Thus, 12 Okla. Stat. § 682(B) is inapplicable and does not bar Plaintiffs' claim.

B. Alter Ego Liability

"'The general rule is that a corporation is regarded as an entity separate and distinct from its shareholders.'" Lawlor v. District of Columbia, 758 A.2d 964, 975 (D.C. 2000) (quoting Vuitch v. Furr, 482 A.2d 811, 815 (D.C. 1984)). Plaintiffs may pierce the corporate

veil and hold Defendant Arase personally liable under the theory of alter ego upon proving "'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetuate fraud or wrong' or 'other considerations of justice and equity' justify it." Estate of Raleigh v. Mitchell, 947 A.2d 464, 470 (D.C. 2008) (quoting Bingham v. Goldberg. Marchesano. Kohlman. Inc., 637 A.2d 81, 93 (D.C. 1994)) (internal quotation marks omitted). Defendant argues that Plaintiffs have failed to sufficiently plead facts that would support a finding of either element.

In determining whether to pierce the corporate veil and strip TCG of its separate legal existence, courts "consider various factors, such as '(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors.'" Raleigh, 947 A.2d at 471 (quoting Bingham, 637 A.2d at 93). Courts also "may ignore existence of the corporate form whenever an individual so dominates his organization 'as in reality to negate its separate personality.'" Valley Fin., Inc. v. United States, 629 F.2d 162, 172 (D.C. Cir. 1980) (quoting Quinn v. Butz, 510 F.2d 743, 758 (D.C. Cir. 1975)). Plaintiffs allege that Arase "controlled and dominated" TCG. (Am. Compl., Dkt. No. 56, at 11.) To support this conclusory statement, Plaintiffs assert the following: that Arase is the sole shareholder of TCG Virginia; that TCG Virginia is a shell company that wholly owns TCG; and that Arase is the Chairman, CEO, and sole director of TCG and TCG Virginia. (See id. at 10.) While sole ownership alone is insufficient to establish unity of ownership and interest, "it is

certainly not irrelevant." Valley Fin., 629 F.2d at 172. Arguing that Arase disregarded corporate formalities and extensively intermingled corporate funds and personal assets, Plaintiffs assert the following: that Arase had TCG distribute large sums of money to himself that were greater than Arase's ordinary income and exceeded the amount needed to pay taxes on Arase's share of TCG earnings; that Arase made these payments to himself without notifying TCG's bank or receiving the bank's permission in violation of a credit agreement; that Arase paid his wife with TCG funds when she had not performed any services for TCG; that Arase loaned $6 million in personal funds through his wholly owned and controlled entity Cooper, LLC, to his wholly owned and controlled entity Essex Financing, LLC ("Essex"), so that Essex could acquire the bank loan TCG used to purchase Eagle; that Arase did not formally document that transaction; that TCG has continued to make loan payments to Essex; that Arase owns the property TCG leases; and that Arase leased the property to TCG in excess of fair market value. (See id. at 11-15.) Plaintiffs also argue that Arase used the corporate form of TCG to perpetrate fraud and injustice against Plaintiffs. Plaintiffs assert that TCG and Arase made false representations to Plaintiffs in entering into the Agreement, that Arase concealed the existence of a conflicting agreement, and that Arase used TCG to make large distributions of money to himself all to the detriment of the Plaintiffs. (See Pls.' Resp., Dkt. No. 73, at 24-25; see also Am. Compl., Dkt. No. 56, at 10-12.) Viewing these facts in a light most favorable to the Plaintiffs, the Court finds Plaintiffs have alleged sufficient facts to state a plausible claim of alter ego liability. See Jefferson v. Collins, 905 F. Supp. 2d 269, 278 (D.D.C. 2012) (holding that plaintiffs' assertions that

7

defendant owned at least fifty percent of the company, dominated the conduct of the company, and acted on the company's behalf at every stage of the real estate transaction was sufficient to survive a Rule 12(b)(6) motion to dismiss even though plaintiffs had not alleged extensive intermingling, initially inadequate capitalization, or fraudulent use of company to shield defendant from creditors).

The Court agrees with Defendant that Plaintiffs have not pleaded facts supporting a reasonable inference that TCG had inadequate initial capitalization or that Arase used TCG to protect himself or his personal business from creditors. Plaintiffs have not made any "specific allegation[s] that the company's assets and revenues were '[grossly] small in relation to the nature of the business of the corporation and the risks attendant to such businesses.'" United States ex rel. Landis v. Tailwind Sports Corp., No. 10-CV-00976 (RLW), 2014 WL 2772907, at *37 (D.D.C. June 19, 2014) (citation omitted). Nor do Plaintiffs allege any facts sufficiently showing that Arase fraudulently used TCG to protect himself or his personal business from liability. See McWilliams Ballard, Inc. v. Broadway Mgmt. Co., 636 F. Supp. 2d 1, 9 (D.D.C. 2009); see also Harris v. Wagshal, 343 A.2d 283, 287 (D.C. 1975), overruled on other grounds, BWX Electronics, Inc. v. Control Data Corp., 929 F.2d 707 (D.C. Cir. 1991). However, Plaintiffs' complaint does not need to "demonstrate that all of these non-exhaustive factors are satisfied to survive a Rule 12(b)(6) motion." Jefferson, 905 F. Supp. 2d at 278. "No single factor is dispositive, and 'considerations of justice and equity may justify piercing the corporate veil.'" Lawlor, 758 A.2d at 975 (quoting Bingham, 637 A.2d at 93).

## III. CONCLUSION

Accordingly, the Court hereby DENIES Defendant Martin Arase's Motion to Dismiss (Dkt. No. 65).

IT IS SO ORDERED this 2nd day of December, 2014.

_____
ROBIN J. CAUTHRON
United States District Judge